Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| ASOCIACIÓN DE RESIDENTES HACIENDAS DEL DORADO, INC.<br><br>Apelada<br><br>v.<br><br>ELITE COMM LLC, **ELITE TOWERS LLC**; SOLARES Y TERRENOS DEL TERRUÑO LLC; ING. JAIME A. SEDA; OFICINA DE GERENCIA DE PERMISOS; E INMOBILIARIA RÍO LAJAS, INC.<br><br>Apelante | TA2026AP00445<br><br>CONSOLIDADO CON | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV02992<br><br>Sobre: Ley para la Reforma del Proceso de Permisos (Ley Núm. 161-2009) |
| ASOCIACIÓN DE RESIDENTES HACIENDAS DEL DORADO, INC.<br><br>Apelada<br><br>v.<br><br>ELITE COMM LLC, ELITE TOWERS LLC; **SOLARES Y TERRENOS DEL TERRUÑO LLC**; ING. JAIME A. SEDA; OFICINA DE GERENCIA DE PERMISOS; E INMOBILIARIA RÍO LAJAS, INC.<br><br>Apelante | TA2026AP00447 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV02992<br><br>Sobre: Ley para la Reforma del Proceso de Permisos (Ley Núm. 161-2009) |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparecen Elite Towers LLC (Elite Towers) en el recurso TA2026AP00445, y Solares y Terrenos del Terruño LLC (Solares y Terrenos) en el recurso TA2026AP00447 (en adelante y en conjunto,

parte apelante), mediante los recursos consolidados de epígrafe, para solicitar la revisión de la *Sentencia* emitida el 28 de agosto de 2025, notificada correctamente el 10 de abril de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Mediante la *Sentencia* apelada, y luego de la celebración de una vista, el foro primario declaró *No Ha Lugar* las dos (2) solicitudes de desestimación presentadas por la parte apelante. De otra parte, dictó sentencia a favor de la parte apelada del título, ordenando la paralización de la obra de construcción de la torre de telecomunicaciones y la revocación del permiso otorgado por Oficina de Gerencia de Permisos (en adelante OGPe). Además, impuso costas, gastos y $3,000 dólares en honorarios de abogado.

Por los fundamentos que expondremos, se *revoca* la *Sentencia* apelada.

I

Conviene mencionar que esta es la *segunda* ocasión en la cual este Tribunal de Apelaciones atiende dos (2) recursos consolidados relacionados al pleito de epígrafe. En la *primera* ocasión, al igual que en el presente, tanto Elite Towers como Solares y Terrenos incoaron dos (2) recursos apelativos sobre la *Sentencia* emitida del 28 de agosto de 2025, los cuales fueron consolidados por este Tribunal.[1]

Sin embargo, un Panel hermano desestimó los recursos consolidados luego de concluir que los mismos fueron presentados de forma prematura, en vista de que *la Sentencia* objeto de apelación no le fue notificada a la OGPe, ni a Inmobiliaria Río Lajas, Inc. (Inmobiliaria).[2] Así, pues, recibido el Mandato en la primera

---

[1] Nos referimos a los alfanuméricos TA2025AP00388 y TA2025AP00392.
[2] Véase Sentencia de los alfanuméricos TA2025AP00388 y TA2025AP00392. Véase, además, SUMAC TPI, a la Entrada Núm. 48, volante de notificación del 28 de agosto de 2025.

instancia judicial,[3] notificó nuevamente la *Sentencia* a todas las partes del título el día 10 de abril de 2026.[4]

Notificada la *Sentencia*, tanto Elite Towers como Solares y Terrenos, siguiendo el mismo curso de acción, presentaron recursos de apelación sobre la *Sentencia* emitida el 28 de agosto de 2025, los cuales fueron consolidados mediante *Resolución* del 5 de mayo de 2026.[5] Verificada la jurisdicción de los recursos presentados por la parte apelante, nos disponemos a relatar las instancias procesales relevantes al asunto ante nos.

El caso de marras inició, el 10 de junio de 2025, cuando Asociación de Residentes Haciendas del Dorado, Inc. (en adelante, parte apelada) interpuso una *Petición de Injunction* en contra Elite Comm LLC (Elite Comm); Elite Towers LLC (Elite Towers); Solares y Terrenos del Terruño LLC (Solares y Terrenos); el Ingeniero Jaime A. Seda (Ingeniero Seda), y la OGPe.[6] Conviene mencionar que la petición *injunction* se hizo en virtud del Artículo 14.1 de la Ley para la Reforma de Proceso de Permisos de Puerto Rico (Ley Núm. 161.[7] Peticionó al foro primario que ordenara a la parte apelante a paralizar la obra de desarrollo de terrenos en la Urbanización Haciendas del Dorado (Urbanización); evocara el Permiso Único Incidental a Obra Autorizada, con el Número 2022-442288-PUI-301223; ordenara a la parte apelante a devolver el terreno a su estado natural, y la declarara incursa en temeridad.

En respuesta, el tribunal de instancia señaló vista de *injunction* estatutario para el 30 de junio de 2025.[8]

---

[3] SUMAC TPI, a las Entradas Núm. 64 y 65.
[4] *Íd.*, a la Entrada Núm. 48, volante de notificación del 10 de abril de 2026.
[5] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 6.
[6] SUMAC TPI, a la Entrada Núm. 1.
[7] 23 LPRA sec. 9024.
[8] SUMAC TPI, a la Entrada Núm. 4.

Subsiguientemente, el 18 de junio de 2025, la parte apelada presentó *Urgente solicitud de injunction provisional.*[9] Expuso que la continuación de la construcción por la parte apelante implicaría un riesgo de daño irreparable a la vida y salud de los propietarios y residentes de la Urbanización. En mérito de lo anterior, solicitó que se ordenara a la parte apelante, de forma sumaria, el cese de la construcción que se encontraba en proceso.

Evaluado el escrito, el 23 de junio de 2025, el tribunal de instancia declaró *No Ha Lugar* la solicitud de *injunction* provisional.[10] Dispuso que el asunto sería dilucidado en la vista pautada.

En el interín, el 27 de junio de 2025, compareció la OGPe mediante *Moción asumiendo representación legal.*[11] Mediante escrito, además de informar haber sido emplazada y asumir representación legal, se solicitó ser notificada de los asuntos en este caso.

Inconforme, el 30 de junio de 2025, la parte apelada presentó una *Urgente solicitud de remedio provisional y desglose de prueba.*[12] En síntesis, solicitó que se le ordenara a la parte apelante, al Ingeniero Seda y a la OGPe a cesar y desistir, provisionalmente, de continuar el desarrollo de terrenos y/o construcción que llevaba dentro de la Urbanización. Por otra parte, peticionó que se recibiera el desglose de toda la prueba cargada como anejos a los diferentes escritos, presentes y previos, de todas las partes, que hubiese sido presentada en el expediente judicial antes de la vista señalada.

A tenor, ese mismo 30 de junio, se celebró vista.[13] Durante la misma, la parte apelada reiteró su solicitud para que se emitiese

---

[9] SUMAC TPI, a la Entrada Núm. 10.
[10] *Íd.*, a la Entrada Núm. 11.
[11] *Íd.,* a la Entrada Núm. 14.
[12] *Íd.*, a la Entrada Núm. 15. Conforme se desprende de los autos, mediante *Orden* del 30 de junio de 2025, el foro de instancia dispuso que este asunto fue atendido en la vista celebrada en esa fecha. Véase SUMAC TPI, a la Entrada Núm. 17.
[13] *Íd.,* a la Entrada Núm. 60.

orden con la finalidad de que se detuviese la construcción. Por otro lado, la parte apelante solicitó que se señalara una vista en su fondo y se le concediese un término para emplazar a Inmobiliaria. Evaluado lo anterior, el foro primario dispuso que emitiría una orden preventiva de paralización y que la suma a imponer por concepto de la fianza sería de $10,000.00 dólares. Asimismo, señaló vista para los días 22 y 23 de julio de 2025.

Al día siguiente, entiéndase, el 1 de julio de 2025, ocurrieron seis (6) eventos procesales. El *primero* fue que la parte apelada presentó una *Moción solicitando enmendar demanda*, a los fines de incluir a Inmobiliaria como parte demandada en el pleito.[14] Esbozó que, en mérito de las alegaciones sobre falta de parte indispensable surgidas durante la vista celebrada el 30 de junio de 2026, debía enmendarse la petición de *injunction* para incluirla como parte. Adjuntó a su escrito una *Petición de injunction enmendada* y un emplazamiento para Inmobiliaria.[15] Conviene mencionar que del escrito presentado se desprende tanto la dirección física como la dirección postal de Inmobiliaria.

El *segundo* evento procesal fue que, producto de la vista del 30 de junio de 2025, el tribunal de instancia emitió y notificó una *Orden*, mediante la cual ordenó a las partes demandadas a cesar y desistir de desarrollar terrenos, construir o adelantar en cualquier forma la obra que se llevaba a cabo en la finca que ubicaba en la urbanización en cuestión.[16] Lo cual incluía, pero no se limitaba, al desarrollo de terreno y/o construcción por parte de las demandadas, sus agentes, empleados, directivos o cualquier otra persona a nombre de éstos o para beneficio de estos en el antedicho sitio. Asimismo, dispuso que esta orden tendría vigencia inmediata y se

---

[14] SUMAC TPI, a la Entrada Núm. 18.
[15] *Íd.*, Anejo 1.
[16] *Íd.*, a la Entrada Núm. 19.

extendería hasta el día 22 de julio de 2025, fecha en la cual el Tribunal señaló la vista final de *injunction* estatutario. Por otra parte, ordenó a la parte apelada a prestar de forma inmediata una fianza de $10,000.00 dólares, a los fines de responder por todos los daños y perjuicios que se causaran como consecuencia del aseguramiento.

El *tercer* evento procesal fue que se emitió y notificó una segunda *Orden* mediante la cual se le requirió a las partes a presentar, en o antes de la vista de *injunction* estatutario, memorandos de derecho con relación a sus posiciones.[17]

Por otro lado, el *cuarto* evento procesal fue que, mediante una tercera *Orden*, el Tribunal, entre otras cosas, autorizó a presentar la demanda enmendada y ordenó a la Secretaría a expedir el emplazamiento contra Inmobiliaria.[18]

El *quinto* evento procesal fue que la Secretaría del Tribunal expidió el emplazamiento personal contra.[19]

Por último, el *sexto* evento procesal fue que, mediante *Moción en cumplimiento de orden, para consignar fianza en aseguramiento de orden*, la parte apelada informó que había consignado la fianza según ordenado.[20]

Así las cosas, el 21 de julio de 2025, ocurrieron tres (3) eventos procesales. El *primero* fue que el Ingeniero Seda, Elite Towers, y Elite Comm interpusieron una *Urgente moción asumiendo representación legal y solicitud de desestimación*.[21] Además de solicitar la admisión a la representación legal, estas partes esbozaron, en síntesis, que, presentada la petición enmendada, el 1 de julio de 2025, se expidió emplazamiento contra Inmobiliaria y que, a dicha fecha, no obraba prueba del diligenciamiento. Esbozó que el petitorio no podía

---

[17] SUMAC TPI, a la Entrada Núm. 20.
[18] *Íd.*, a la Entrada Núm. 21.
[19] *Íd.,* a la Entrada Núm. 22.
[20] *Íd.*, a la Entrada Núm. 23.
[21] *Íd.*, a la Entrada Núm. 27. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

enmendarse para subsanar esa deficiencia. A tenor, solicitó la desestimación del caso.

Por otro lado, el *segundo* evento procesal fue que la parte apelada presentó un *Escrito al expediente judicial*.[22] En este, adjuntó el diligenciamiento del emplazamiento expedido contra Inmobiliaria. Se desprende que fue diligenciado el 9 de julio de 2025.

El *tercer* y último evento fue que, mediante un escrito independiente, titulado *Moción asumiendo representación legal y solicitando desestimación*, Solares y Terrenos igualmente solicitó la desestimación de la demanda.[23] Además de solicitar la admisión como representante legal, alegó que, en esa misma fecha, se enmendaron mediante escritura las condiciones restrictivas de la Urbanización.[24] Esbozó que en las mismas no se prohibió el uso comercial de los solares y que con estas nuevas restrictivas enmendadas no existían argumentos legales alguno de los planteados en la acción de autos. Por otro lado, se unieron a los reclamos del Ingeniero Seda, Elite Tower LLC y Elite Comm LLC en su solicitud de desestimación. Así, pues, solicitó que se atendieran los reclamos de desestimación de las partes.

Al día siguiente, el 22 de julio de 2025, ocurrieron tres (3) eventos procesales. El *primero* fue que mediante *Orden* se dejó sin efecto la vista pautada para ese día.[25] El *segundo* fue que mediante otra *Orden* se admitieron como representantes legales a los licenciados Daniel Martínez Avilés, Teresita Leiseca Sánchez y Edgardo Zapata Torres.[26] Por otra parte, se le concedió término a la

---

[22] SUMAC TPI, a la Entrada Núm. 28. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.
[23] *Íd.*, a la Entrada Núm. 29. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.
[24] *Íd.*, a la Entrada Núm. 29. Hizo referencia a la Escritura Núm. 79, otorgada en Guaynabo, Puerto Rico y presentada ante el Registro de la Propiedad.
[25] *Íd.*, a la Entrada Núm. 30. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.
[26] *Íd.*, a la Entrada Núm. 31. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.

parte apelada para que presentara su posición respecto a las dos (2) mociones de desestimación.

Finalmente, el *tercer* evento procesal fue que la parte apelada presentó su *Memorando de derecho en cumplimiento de orden y desglose de prueba adicional.*[27] En síntesis, cuestionó cuáles servidumbres en equidad estaban impuestas en la finca; la legitimación activa de la parte apelante; el foro con jurisdicción sobre la controversia presentada, y el remedio al que podía aspirar la parte apelante. Por otro lado, adjuntó una serie de documentos los cuales informó utilizaría durante la vista a celebrarse.

Subsiguientemente, el 30 de julio de 2025, Solares y Terrenos presentó una *Moción informativa* en la cual reiteró los planteamientos sobre su rol de sucesor en derecho de Inmobiliaria, así como los señalamientos sobre las nuevas condiciones restrictivas derivadas de la Escritura Número 79, las cuales no prohibían el uso comercial de los solares. A tenor, solicitó nuevamente la desestimación del pleito.[28]

En respuesta, el 4 de agosto de 2025, mediante *Orden*, el foro primario ordenó a que, en el término de cinco (5) días, se sometiera la Escritura Número 79 sobre enmiendas a las condiciones restrictivas.[29]

Luego, el 6 de agosto de 2025, la parte apelada presentó una *Moción en cumplimiento de orden* mediante la cual expuso su posición respecto a la moción de desestimación de Solares y Terrenos.[30] Esgrimió que el cambio en las condiciones restrictivas

---

[27] SUMAC TPI, a la Entrada Núm. 32. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

[28] *Íd.*, a la Entrada Núm. 34. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

[29] *Íd.*, a la Entrada Núm. 36. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.

[30] *Íd.*, a la Entrada Núm. 37. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

no tenía ningún efecto porque, al transmitirse las restricciones vigentes en el momento que los titulares compraron sus terrenos, la parte apelada retenía todo el derecho de exigir el cumplimiento de estas. A tenor, solicitó que se declarara sin lugar la moción de desestimación presentada por la referida parte.

En respuesta, mediante *Orden* de ese mismo día, el foro primario dispuso que el asunto quedó sometido para su consideración.[31]

Al día siguiente, el 7 de agosto de 2025, ocurrieron tres (3) eventos procesales.

El *primero* fue que, mediante un escrito, igualmente titulado *Moción en cumplimiento de Orden*, la parte apelada expuso su posición respecto a la moción de desestimación presentada por Elite Comm, Elite Towers y el Ingeniero Seda.[32] Arguyó que Elite Comm ni Elite Towers accionaron el mecanismo adecuado para su petición, no utilizaron la causal adecuada para su queja y no cumplieron con el debido proceso, si entendía que la adjudicación del caso no había sido en el término adecuado. Así, pues, igualmente solicitó que se declarara sin lugar esta moción de desestimación.

El *segundo* evento procesal fue que Solares y Terrenos presentó una *Moción en cumplimiento de orden e informativa*, mediante la cual sometió la Escritura Número 79, así como otros los documentos.[33] Mientras que el *tercer* evento procesal fue que, en respuesta al escrito en oposición a la moción de desestimación presentada por Elite Comm, Elite Towers y el Ingeniero Seda, la

---

[31] SUMAC TPI, a la Entrada Núm. 38. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.

[32] *Íd.,* a la Entrada Núm. 39.

[33] *Íd.*, a la Entrada Núm. 40. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

primera instancia judicial dispuso, mediante *Orden,* que el asunto quedaba sometido para consideración del tribunal.[34]

Luego, el 13 de agosto de 2025, la parte apelada presentó una *Moción justificada en réplica y solicitando remedio.*[35] Esencialmente, refutó la efectividad y falta de autoridad sobre las enmiendas a las condiciones restrictivas expresadas en la Escritura Número 79.

Ese mismo día, el foro primario emitió una *Orden* mediante la cual permitió la réplica presentada por la parte apelada, así como que pautó una vista argumentativa para el 20 de agosto de 2025.[36]

También, en esa fecha, Elite Comm, Elite Towers y el Ingeniero Seda presentaron una *Moción urgente en solicitud de orden.*[37] Adujeron que, la *Orden* de cese y desista del 1 de julio de 2025, había expirado por su propio tenor al concluirse la vista. Añadieron que no se logró retomar las labores de construcción, lo cual provocó pérdida de tiempo, costos adicionales y riesgo de incumplimientos contractuales, pese a contar con un permiso firme no impugnado. En vista de lo anterior, suplicaron que se declarara que la referida orden no estaba vigente; se tuviese por no presentada la *Moción justificada en réplica y solicitando remedio*, y se emitiera una orden de no interferencia contra la parte apelada.

Al día siguiente, el 14 de agosto de 2025, la parte apelada interpuso una *Urgente moción solicitando extensión de orden de remedio provisional.*[38] En esencia, peticionó que, de forma urgente,

---

[34] SUMAC TPI, a la Entrada Núm. 41. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.

[35] *Íd.,* a la Entrada Núm. 43. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

[36] *Íd.,* a la Entrada Núm. 44. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.

[37] *Íd.,* a la Entrada Núm. 45. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

[38] *Íd.,* a la Entrada Núm. 46. Puntualizamos que dicho escrito no fue notificado de forma simultánea a través del SUMAC TPI a Inmobiliaria, ni tampoco obra acreditación de la representación legal de la parte compareciente a esos fines.

se extendiera la orden sobre remedio provisional hasta la fecha de la celebración de la nueva vista señalada.

Evaluados los escritos, ese mismo 14 de agosto, el foro primario ordenó la extensión de la *Orden* de remedio provisional hasta el 20 de agosto de 2025.[39] Por otra parte, aclaró que la vista pautada para esa fecha era una argumentativa, para determinar la procedencia de la solicitud de desestimación y disponer si la Escritura Número 79, en efecto, enmendaba las condiciones restrictivas que surgían de la Escritura Número 11.

Así las cosas, el 20 de agosto de 2025, se celebró la vista argumentativa.[40] A la vista compareció la parte apelada, así como Elite Comm, Elite Towers y el Ingeniero Seda, todos por conducto de sus representantes legales. No surge de la Minuta la comparecencia de la OGPe ni de Inmobiliaria a esta vista. Durante la vista, cada una de las partes que compareció tuvo oportunidad de presentar sus argumentos. Una vez culminadas las argumentaciones, el asunto quedó sometido para la consideración del Tribunal.

Producto de la vista, el 28 de agosto de 2025, notificada correctamente el 10 de abril del 2026, el tribunal de instancia emitió la *Sentencia* que nos ocupa. [41]

Mediante este dictamen, el foro primario declaró *No Ha Lugar* las dos (2) solicitudes de desestimación presentadas por la parte apelante. Por otro lado, dictó sentencia a favor de la parte apelada del título, ordenando la paralización de la obra de construcción de

---

[39] SUMAC TPI, a la Entrada Núm. 47. Del volante de notificación OAT 1812 no se desprende que la *Orden* le hubiese sido notificada a Inmobiliaria.

[40] *Íd.*, a la Entrada Núm. 59.

[41] *Íd.*, a la Entrada Núm. 48. La primera notificación fue emitida el 28 de agosto de 2025. El foro de instancia omitió notificar la Sentencia a la OGPe y a Inmobiliaria. Por tal razón, el Tribunal de Apelaciones, en el alfanumérico TA2025AP00388 consolidado con el TA2025AP00392, dictó Sentencia desestimatoria puesto a que, en esa ocasión, el recurso de presentó de forma prematura. La segunda notificación de la Sentencia fue emitida el 29 de diciembre de 2025. Dicha notificación incluyó a la OGPe y a Inmobiliaria, pero, para esa fecha, no se había recibido el Mandato del Tribunal de Apelaciones, con relación al antedicho recurso apelativo. La tercera y última notificación fue emitida el 10 de abril de 2026, la cual constituye la fecha de notificación de la *Sentencia* objeto de esta apelación. La misma fue notificada a todas las partes.

la torre de telecomunicaciones y la revocación del permiso otorgado por la OGPe. Además, impuso costas, gastos y $3,000.00 dólares por concepto de honorarios de abogado. Producto de la vista celebrada, el foro de instancia consignó veinticuatro (24) determinaciones de hechos las cuales incorporamos por referencia.[42]

En su dictamen, el foro de instancia concluyó que no procedía la desestimación de la petición, y consideró probado que las condiciones restrictivas de uso y edificación obligatoria no habían sido modificadas o enmendadas.

Inconforme, y luego de haberse notificado la *Sentencia* a todas las partes, la parte apelante acudió ante esta Curia mediante los recursos de epígrafe, posteriormente consolidados.

En *primer* lugar, en el recurso apelativo, asignado el alfanumérico TA2026AP00445, Elite Towers esgrimió los errores siguientes:

**PRIMER ERROR:** Erró el Tribunal de Primera Instancia al usar indebidamente el Art. 14.1 de la Ley 161-2009 como foro para adjudicar servidumbres y restricciones privadas, y convertirlo, en la práctica, en una revisión general de permisos, contrariando su diseño sumarísimo, taxativo y acotado.

**SEGUNDO ERROR:** Erró el Tribunal de Primera Instancia al exceder el remedio permitido por el Art. 14.1, revocando el permiso y paralizando la obra sin encajar su decisión en causal taxativa alguna y sin ceñirse a la circunscripción del estatuto; además, invirtió la carga de la prueba y se apoyó en la premisa errónea de "permiso inexistente" a pesar de la notificación previa por OGPe.

**TERCER ERROR:** Erró el Tribunal de Primera Instancia al quebrantar el carril sumarísimo del Art. 14.1 mediante enmiendas y aperturas incompatibles con sus términos perentorios, lo que desnaturalizó el procedimiento especial y conllevó un trámite fuera de los parámetros temporales estrictos fijados por el estatuto.

**CUARTO ERROR:** Erró el Tribunal de Primera Instancia al dictar sentencia sin hallazgos específicos que aten causal, hechos y remedio; y, peor aún, sin resolver primero los umbrales jurisdiccionales de parte indispensable y academicidad, viciando el proceso desde su origen.

**QUINTO ERROR:** Erró el Tribunal de Primera Instancia al calificar la torre de telecomunicaciones como "uso

---

[42] SUMAC TPI, a la Entrada Núm. 48, págs. 2-6.

comercial", desconociendo que, por el marco legal local y federal, se trata de infraestructura esencial de servicio público y no de comercio al detal; por ello, no activa cláusulas que solo prohíben "usos comerciales". Esta errónea clasificación, además, equivale a una prohibición efectiva del despliegue de servicios inalámbricos en violación de 47 U.S.C. § 332(c)(7)(B)(i)(II).

**SEXTO ERROR:** Erró el Tribunal de Primera Instancia al no armonizar la interpretación de la escritura con su cláusula de fomentar mayor densidad residencial, condicionada a la Junta de Planificación y la ARPE (hoy OGPe), y con la naturaleza infraestructural de la facilidad impugnada, aplicando además la doctrina de interpretación restrictiva de las servidumbres en equidad de manera invertida y contra el dueño del predio sirviente.

**SÉPTIMO ERROR:** Erró el Tribunal de Primera Instancia al imponer costas, gastos y $3,000 en honorarios por temeridad, careciendo de base legal en el carril estatutario invocado y al margen de los criterios sustantivos aplicables, dado que la posición de los demandados estaba sólidamente fundada en el texto de la Ley 161-2009, en la jurisprudencia del Tribunal Supremo y en el marco federal de telecomunicaciones.

En *segundo* lugar, mediante el recurso apelativo asignado el alfanumérico TA2026AP00447, Solares y Terrenos esgrimió los errores siguientes:

ERROR A: NULIDAD DE LA SENTENCIA POR VIOLACIÓN AL DEBIDO PROCESO DE LEY: EL TPI CONVIRTIÓ UNA VISTA ARGUMENTATIVA SOBRE DESESTIMACIÓN EN UNA ADJUDICACIÓN FINAL DE LOS MÉRITOS, SIN JUICIO, SIN NOTIFICACIÓN Y SIN OPORTUNIDAD DE PRESENTAR PRUEBA, EN VIOLACIÓN A LA CONST. PR ART. II § 7 Y A LAS REGLAS 36 Y 39 DE PROCEDIMIENTO CIVIL DE 2009.

ERROR B: NULIDAD DE LA SENTENCIA POR AUSENCIA DE PARTE INDISPENSABLE: EL TPI ADJUDICÓ LA CONTROVERSIA SIN ACUMULAR A SOLARES, FINCAS Y HACIENDAS LLC — SUCESORA EN DERECHO DE INMOBILIARIA RÍO LAJAS, INC. Y OTORGANTE DE LA ESCRITURA #79 — EN VIOLACIÓN A LA REGLA 16.1 DE PROCEDIMIENTO CIVIL DE 2009.

ERROR C: ERROR DE DERECHO: EL TPI DETERMINÓ QUE LAS PARTES DEMANDADAS NO DESCARGARON SU PESO PROBATORIO SOBRE LAS DEFENSAS DE RENUNCIA, ABANDONO Y EXTINCIÓN DE LAS RESTRICCIONES RESTRICTIVAS (ART. 818, CÓD. CIV. 2020), CUANDO FUE EL PROPIO TRIBUNAL QUIEN LES PROHIBIÓ PRESENTAR PRUEBA EN LA VISTA DEL 20 DE AGOSTO DE 2025.

ERROR D: ERROR PROCESAL Y DE NOTIFICACIÓN: EL TPI SANCIONÓ IMPLÍCITAMENTE A LAS PARTES CODEMANDADAS POR INCUMPLIR CON UNA ORDEN DEL 1 DE JULIO DE 2025 QUE NUNCA FUE NOTIFICADA A SUS REPRESENTACIONES LEGALES, LAS CUALES AÚN NO HABÍAN CONSTITUIDO COMPARECENCIA FORMAL EN ESA FECHA, EN VIOLACIÓN A LA REGLA 67.1 DE PROCEDIMIENTO CIVIL Y AL DEBIDO PROCESO DE LEY.

ERROR E: ERROR EN LA IMPOSICIÓN DE HONORARIOS DE ABOGADOS: EL TPI IMPUSO $3,000 EN HONORARIOS A LAS PARTES CODEMANDADAS SIN HACER DETERMINACIONES ESPECÍFICAS DE TEMERIDAD BAJO LA REGLA 44.1(d) DE PROCEDIMIENTO CIVIL, Y EN CONTRAVENCIÓN AL ESQUEMA DE LA LEY NÚM. 161-2009 QUE RESERVA TAL SANCIÓN PARA LA PARTE PETICIONARIA CUANDO SU RECURSO CARECE DE MÉRITO.

ERROR F: ERROR JURISDICCIONAL: EL TPI REVOCÓ EL PERMISO OGPe NÚM. 2022-442288-PCOC-030350 SIN QUE OGPe — PARTE INDISPENSABLE EN CUALQUIER ACCIÓN DE REVOCACIÓN DE PERMISO BAJO EL ART. 14.1 DE LA LEY NÚM. 161-2009 — HAYA TENIDO OPORTUNIDAD DE DEFENDER LA VALIDEZ DEL PERMISO EMITIDO.

ERROR G: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO RECONOCER QUE LA ESTRUCTURA EN CUESTIÓN CONSTITUYE INFRAESTRUCTURA PÚBLICA BAJO LA LEY 161-2009 Y QUE SU OPERACIÓN ES UNA ACTIVIDAD PASIVA QUE NO CONTRAVIENE EL PROPÓSITO DE LAS RESTRICCIONES RESIDENCIALES.

Como parte del trámite apelativo, la parte apelada interpuso dos (2) mociones de desestimación, ambas por motivos jurisdiccionales. La primera fue presentada el 11 de mayo de 2026, mientras que la segunda fue presentada el 24 de mayo de 2026. Ambas fueron declaradas *No Ha Lugar*.[43]

Así las cosas, el 26 de mayo de 2026, la OGPe presentó un escrito intitulado *Moción de la OGPe para presentar postura sobre la sentencia emitida por el Tribunal de Primera Instancia y los recursos radicados por los apelantes.* En esencia, peticionó que se revocara el dictamen apelado puesto a que no se celebró una vista evidenciaria ni permitió que la parte apelante, así como la OGPe e Inmobiliaria presentaran sus defensas en el caso.

Finalmente, el 28 de mayo de 2026, compareció la parte apelada mediante *Alegato de la parte apelada.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

---

[43] La primera *Resolución* fue emitida el 12 de mayo de 2026, mientras que la segunda *Resolución* fue emitida el 26 de mayo de 2026.

II

## A. La Notificación Adecuada

La Sección 7 del Artículo II de la Constitución de Puerto Rico,[44] al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos,[45] garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. Esta garantía procesal funciona de dos (2) vertientes, la sustantiva y la procesal. En lo referente a esta última, se ha entendido que "el debido proceso de ley procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo".[46] Para garantizar las exigencias mínimas del debido proceso de ley, todo procedimiento adversativo debe satisfacer lo siguiente: (i) notificación adecuada del proceso; (ii) proceso ante un juez imparcial; (iii) oportunidad de ser oído; (iv) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (v) asistencia de abogado, y (vi) que la decisión se base en la evidencia presentada y admitida en el juicio.[47] A esos efectos, la característica medular de la garantía del debido proceso de ley es que el procedimiento seguido sea uno justo.[48]

La notificación adecuada es aquella que se dirige específicamente a la parte o a su representación legal.[49] Sobre este particular, nuestra jurisprudencia ha establecido que la incorrecta notificación atenta contra los derechos de las partes, al privarles de cuestionar el dictamen emitido y causarles demoras e impedimentos en el proceso.[50] Por ello, al no notificarse adecuadamente alguna

---

[44] CONST. PR, Art. II, Sec. 7.
[45] CONST. EE. UU., Emda. V y XIV.
[46] *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 887 (1993); *López Vives v. Policía de P.R.*, 118 DPR 219 (1987).
[47] *Hernández v. Secretario*, 164 DPR 390 (2005); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, a la pág. 889.
[48] *Rivera Santiago v. Srio. de Hacienda,*119 DPR 265, 274 (1987).
[49] *R & G Mortgage v. Arroyo Torres y otros*, 180 DPR 511, 525 (2010).
[50] *Berríos Fernández v. Vázquez Botet*, 196 DPR 245, 250-251 (2016).

resolución, orden o sentencia, estas no surten efecto y los términos no comienzan a transcurrir.[51]

En lo pertinente al caso de marras, precisa señalar, que la Regla 67.1 de Procedimiento civil exige que "toda orden emitida por el tribunal y todo escrito presentado por las partes se[a] notificado a todas las partes".[52] Incluso, la notificación debe realizarse el mismo día en que se emita la orden o se presente el escrito. De otra parte, la Regla 67.2 de Procedimiento Civil explica, respecto a las partes que se auto representan, que la notificación "se efectuará entregándole copia o remitiéndola por correo, fax o medio electrónico a la última dirección que se haya consignado en el expediente [. . .]".

### B. Las Directrices Administrativas del SUMAC

Las Directrices Administrativas para la Presentación y Notificación Electrónica de Documentos Mediante el Sistema Unificado de Manejo y Administración de Casos y el Formulario Interactivo (Directrices Administrativas del SUMAC), "[rigen] la presentación, la notificación y la tramitación electrónica de los escritos que formen parte de los procesos judiciales, a nivel de primera instancia y a nivel de los foros apelativos [. . .]".[53] Asimismo, estas directrices, regulan las responsabilidades y deberes de los abogados en el SUMAC.[54]

Sobre las notificaciones electrónicas, las referidas directrices disponen que "[l]a presentación electrónica de un escrito constituirá la notificación que debe efectuarse entre abogados y abogadas y entre partes, según disponen las Reglas de Procedimiento Civil y las Reglas de Procedimiento Criminal, siempre y cuando hayan comparecido al caso".[55] A tales efectos, una vez se presente un

---

[51] *Bco. Popular v. Andino Solís,* 192 DPR 172, 183 (2015).
[52] 32 L.P.R.A. Ap. V, R. 67.1.
[53] Sección III de las Directrices Administrativas del SUMAC, aprobadas mediante la OAJP-2013-173 de 10 de enero de 2014, según enmendadas.
[54] *Íd.*
[55] *Íd.*, Sección IX (5).

documento en el SUMAC, conforme al procedimiento establecido en las Directrices, "se generará una notificación electrónica del documento presentado a las abogadas y abogados registrados en el caso y los y las litigantes por derecho propio con correo electrónico registrado en el sistema".[56]

Ahora bien, "será deber del abogado o de la abogada presentante notificar todo escrito que presente en el SUMAC a la dirección que haya consignado la parte en el expediente para fines de notificación, de no haber sido notificado a través del sistema".[57] A esos fines, "el sistema emite una notificación entre partes que permite corroborar las partes notificadas a través de la plataforma electrónica y la dirección de correo electrónico al que se envió el documento".[58]

### III

Según hemos reseñado, este Tribunal tiene ante su consideración dos (2) recursos apelativos los cuales fueron consolidados. Mediante estos, la parte apelante muestra su inconformidad con que, luego de que el tribunal de instancia celebrara una vista argumentativa, dispuso denegar dos (2) solicitudes de desestimación. Así como que, producto de esa vista, también dictaminó declarar *Ha Lugar* la solicitud de interdicto presentada por la parte apelada. Según hemos visto, la parte apelante, en cada uno de los recursos apelativos, esgrimió una serie de errores los cuales hemos reseñado y analizado.

Ahora bien, luego de haber estudiado con detenimiento la totalidad de los autos ante nuestra consideración, incluyendo el expediente judicial del presente caso en el SUMAC TPI, colegimos que por el curso que hemos decidido, se hace innecesario discutir la

---

[56] Sección IX (5) de las Directrices Administrativas del SUMAC, *supra.*
[57] *Íd.,* Sección IX (6).
[58] *Íd.*

totalidad de los errores, por lo cual nos circunscribiremos a los específicos para fundamentar nuestro dictamen. Veamos.

Particularmente, nos enfocaremos en la comisión del *cuarto* error esgrimido por Elite Towers,[59] y los errores identificados con las letras A y B por Solares y Terrenos.[60] En esencia, en ambos errores se plantea que el tribunal *a quo* violó el debido proceso de ley al preterir a Inmobiliaria de los procesos. Estamos de acuerdo.

Comenzamos por resaltar que, aunque el Sistema Unificado de Manejo y Administración de Casos (SUMAC) generará una notificación electrónica de los documentos presentados por los abogados registrados en el caso, así como de los litigantes por derecho propio, con correo electrónico registrado en el sistema,[61] es deber de todo abogado informar todo escrito que no notificó de la manera correspondiente.[62] Para esto, se emite un volante de notificación que permite corroborar las partes notificadas a través de la plataforma electrónica y la dirección de correo electrónico al que se envió el documento.[63] De manera que, no hay excusa para haber preterido desde el momento del diligenciamiento a Inmobiliaria. Estos señalamientos no son nuevos, pues, incluso fueron objeto del curso desestimatorio en el caso TA2025AP00388 consolidado con el TA2025AP00392.[64] Por ende, esta es la *segunda* ocasión en la cual este foro atiende planteamientos relacionados a la falta de notificación adecuada.

Conforme surge de nuestro relato procesal previo, luego de que se acreditó haber diligenciado el emplazamiento contra Inmobiliaria el 9 de julio de 2025, el cual, según hemos constatado era un emplazamiento el cual no contenía citación alguna a vista,[65]

---

[59] En el recurso de apelación TA2026AP00445.

[60] En el recurso de apelación TA2026AP00447.

[61] Sección IX (5) de las Directrices Administrativas del SUMAC, *supra.*

[62] *Íd.*, Sección IX (6).

[63] *Íd.*

[64] Véase, SUMAC TA, Recurso TA2025AP00388, a la Entrada Núm. 17, págs. 7-9.

[65] SUMAC TPI, a la Entrada Núm. 22.

se le pretirió de la notificación de **todos** los escritos presentados por las partes del título, así como de **todas** las órdenes emitidas por el foro primario luego de esa fecha, incluyendo, pero sin limitarse a la orden de señalamiento de vista argumentativa que provocó el desenlace final del caso. De modo que, a pesar de haberse autorizado la *Petición de injunction enmendada* para incluirle como parte indispensable, Inmobiliaria ni si quiera tuvo la oportunidad de comparecer a esta vista, tras no habérsele citado. Y aún con lo anterior, producto de la vista, el foro de instancia dictó sentencia.

Dicho lo anterior, es menester recordar que el Tribunal debe mantener especial atención al cumplimiento con las reglas procesales y las directrices administrativas sobre notificación, pues, como bien expusimos, ello asegura el debido proceso de ley que ampara a las partes. Lo anterior, incluye a los representantes legales de las partes al momento de presentar sus escritos. Más aún, la supervisión constante de la Secretaría de la primera instancia judicial, al momento de notificar las determinaciones judiciales, resulta esencial para evitar que situaciones como la antes descrita se repitan. De esta manera, se promueve una gestión más eficiente y se evita la duplicación de esfuerzos y gastos innecesarios.

Luego de haber realizado un minucioso análisis y estudio del expediente ante nos, incluyendo los autos ante el tribunal de instancia, nos es forzoso concluir que el cuarto error esgrimido por Elite Towers,[66] y los errores identificados con las letras A y B por Solares y Terrenos,[67] fueron cometidos. De modo que procede revocar la *Sentencia* apelada.

En consecuencia, se ordena a los representantes legales de todas las partes a que, en armonía a lo aquí resuelto, procedan a notificar y a acreditar al tribunal de instancia la notificación a

---

[66] En el recurso de apelación TA2026AP00445.
[67] En el recurso de apelación TA2026AP00447.

Inmobiliaria de todos aquellos escritos que han sido presentados luego de habérsele emplazado. De igual forma, se ordena a la primera instancia judicial a notificar a Inmobiliaria todas las determinaciones emitidas a partir del diligenciamiento del emplazamiento a Inmobiliaria, donde fue preterida dicha parte.

Una vez se cumpla con estas gestiones, el foro de instancia deberá, sin dilación, continuar los procedimientos en este caso incluyendo la calendarización y celebración de la vista que proceda, de modo que lo acaecido no sea un impedimento para impartir justicia. Más aún cuando, como bien se sabe, el recurso de *injunction* es un remedio extraordinario que procura la expedición de un mandamiento judicial que le exige a una persona a actuar o le prohíbe realizar determinada conducta que infringe o perjudica los derechos de otra.[68]

IV

Por los fundamentos que anteceden, se *revoca* la *Sentencia* apelada. Se devuelve el caso al foro apelado para la continuación de los procedimientos en armonía a lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[68] Artículo 675 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 3421; E.L.A. v. Asoc. de Auditores, 147 DPR 669, 679 (1999).